UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:14-CR-35-KKC-REW |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| JAMELE WYDALE MUNDY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court, on referral, *see* DE 43, considers reported violations of supervised release conditions by Defendant, Jamele Mundy. This District originally convicted Mundy, in March 2015, of possessing a firearm as a convicted felon. DE 38 (Judgment). Judge Caldwell sentenced Mundy to a prison term of 48 months, followed by a 3-year term of supervised release. *Id.* Defendant began supervision in November 2017. Less than six month after Defendant's release, USPO Carol Martin reported violations by Mundy based on April 2018 cocaine- and marijuana-positive urinalysis results. DE 40 (April 18, 2018, Report). Following the failed screen, Officer Martin recommended, and Judge Caldwell ultimately approved, continuing Defendant's supervised release. DE 40.

On May 25, 2018, the USPO issued a Supervised Release Violation Report alleging two violations; a June 5, 2018, addendum added four violation allegations. Mundy appeared before the undersigned on June 5 for initial proceedings under Federal Rule of Criminal Procedure 32.1. DE 45 (Minute Entry). The Court, upon referral from the District Judge, conducted a final hearing on June 8, 2018. DE 48 (Minute Entry).

1

The May 25 Report and June 5 Addendum alleged a total of six violations. The Government, at the final hearing, agreed (in exchange for a stipulation) to dismiss the fifth and sixth violations.[1] The United States ultimately pursued allegations that Mundy: (1) possessed crack cocaine (2) and, thereby, violated federal law, (3) violated state law by using (and possessing) marijuana, (4) and possessed marijuana in violation of 21 U.S.C. § 844(a). The first two violations hinged on the May 17 discovery of crack cocaine in Mundy's vehicle, found at the hospital after Mundy suffered a gunshot wound. Two weeks later, when the USMS executed this Court's arrest warrant, Mundy discarded marijuana in a police cruiser; he likely had tried to eat other marijuana during transport. The June 1 conduct was marijuana possession in violation of state and federal law. At the final hearing, Defendant (under oath) competently, knowingly, voluntarily, and intelligently stipulated to violations 1-4 as described in the Report and Addendum, and the Court heard statements and arguments as to the proper sentence. DE 48.[2] Mundy's stipulation, the Report, the Addendum, and the underlying record (including the attached substantiating documents) established the violative conduct under Rule 32.1 and § 3583.[3] Accordingly, the Court finds that Mundy violated the conditions of his supervised release as described in reported violations 1-4.

Moving to the effect of the violations, the Court has evaluated the full record, including the original conviction, the case and supervision history, the Presentence Investigation Report, the current Violation Reports, and the content of the final hearing. The Court has considered all of the

---

[1] Violation five alleged controlled substance possession based on a positive Mundy test for cocaine and morphine. Violation six alleged a consequent violation of federal law.

[2] The Court expressly informed Defendant of his reserved right of allocution before the District Judge. The Court afforded Mundy all rights due under Rule 32.1 and 18 U.S.C. § 3583.

[3] The proof standard is a preponderance of the evidence, *see* 18 U.S.C. § 3583(e)(3), which Mundy's sworn stipulation, the substantiating papers, and the Reports obviously satisfy.

§ 3553 factors imported into the § 3583(e)(3) analysis.

Under § 3583, a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Mundy's conviction is for a Class C Felony. 18 U.S.C. §§ 922(g), 924, 3559. For a Class C felony, the maximum revocation sentence provided under § 3583 is two (2) years of imprisonment. *Id.* at § 3583(e)(3). The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *United States v. Perez-Arellano*, 212 F. App'x 436, 438–39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under § 7B1.1(a), the second and fourth violations qualify as Grade B. Given Mundy's criminal history category of VI (the category at the time of the conviction), and the Grade B violations, Defendant's range, under the Revocation Table of Chapter 7, is 21-24[4] months.

A court also may reimpose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the current and any prior violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." 18 U.S.C. § 3583(h). The general supervision-term limits of § 3583(b) apply "[e]xcept as otherwise provided." *Id.* § 3583(b). Given the original 3-year maximum, the Court could potentially reimpose a supervised release term of 36 months less any now-imposed

---

[4] The 24-month statutory maximum caps the range.

revocation term. *See* 18 U.S.C. § 3583(h).

The Court has carefully weighed the nature and circumstances of the violations[5] and Defendant's particular history and characteristics. Mundy's non-compliance began less than six months after his release. Since that time, his drug activity, along with involvement in that lifestyle, has been virtually constant—indeed evidently escalating in intensity. Prior referrals to treatment, further USPO efforts, knowledge of court processes, and the potential for absences from his family have been no deterrent. With the history, the record strongly indicates a need for a meaningful sentence as an effort to deter future criminal conduct, to protect the public, and to impress on Defendant the gravity and consequence of negative choices on the course of his life. Ultimately, even being shot on May 17 was insufficient to convince Mundy to sharply change his lifestyle; the Court must intercede.

For the Grade B violations, the Sentencing Guidelines, as policy, mandate revocation, *see* U.S.S.G. § 7B1.3(a)(1), as does the binding 18 U.S.C. § 3583(g)(1) in this scenario. The Court sees nothing in the record to support an opposite conclusion.[6] The current established (and, to Defendant's credit, admitted) violations reflect a need for a significant revocation term. Mundy committed (at least two) federal felonies while on supervision and admitted possessing multiple controlled substances while on paper. Defendant's drug conduct is acute and devolving. The Court and the USPO have endeavored to help Mundy via paths other than long-term incarceration, but

---

[5] The Guidelines suggest that the *primary* wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). This observation does not detract from but rather shapes the Court's analysis of the statutory factor encompassing offense conduct.

[6] Treatment is not a suitable alternative here. USPO referred him in January, and Mundy has attended zero appointments. Things have only deteriorated for Mundy since.

he has been fully unresponsive to the efforts. Mundy has simply proven himself incapable of complying with release conditions. He squandered the large April break by violating in mid-May and early June, both involving felony conduct. This cries out for revocation, as the statute mandates for drug possession.

Therefore, for all the reasons stated, based on the violations found, and after considering all applicable factors, the Court **RECOMMENDS** that the District Court:

(1)     **REVOKE** Mundy's supervised release;

(2)     commit him to a total term of incarceration of **20 months**;

(3)     impose **16 months** of additional supervision to follow, on all the conditions previously imposed; and

(3)     recommend to the BOP that, to the extent practicable, Defendant be placed in a facility, for which Mundy is eligible, closest to Lexington, Kentucky.

After consideration of the entirety of Chapter 7, and applying the binding statutory factors in § 3553, the Court finds the recommended sentence to be sufficient but not greater than necessary to effectuate and comply with the statute's purposes. The Court carefully took the views of the United States and defense, as expressed in the final hearing, into account in reaching this result. Although slightly below the Revocation Table range (by a single month), the recommendation is for an adequate term. Defendant accepted responsibility for his most recent actions and the Court hopes he (with some time to reflect) will realize some deterrent effect from being shot. Mundy has a young son. The Court is optimistic that, post-incarceration, Mundy can become a productive, contributing member of society, cease his drug activity, and become a beneficial presence in the life of his family.

Defendant's right of allocution under Rule 32.1 persists, as reflected in the record. Any

waiver should comport with the Court's standard waiver form, which the Court provided to defense counsel at the final hearing. Absent waiver, which the defense should file within 5 days if intending to waive, the District Judge will set the matter for a hearing to include allocution.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). With no objection from the parties, the Court shortened the objection period. **Within 5 days** of the date of this Recommendation, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 12th day of June, 2018.

Signed By:
*Robert E. Wier* REW
United States Magistrate Judge